UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBYJOE M. HOFFMEYER,                        Case No. 14-11690

           Plaintiff,                        Paul D. Borman
v.                                            United States District Judge

COMMISSIONER OF SOCIAL SECURITY,              Michael Hluchaniuk
                                              United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 16)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On April 28, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits. (Dkt. 4). This matter is before the Court on cross-motions for summary judgment. (Dkt. 15, 16). Plaintiff also filed a reply in support of her motion. (Dkt. 17).

    B.   Administrative Proceedings

Plaintiff filed the instant claims on May 20, 2011, alleging that she became

disabled on January 1, 2010.  (Dkt. 10-2, Pg ID 40).  The claims were initially disapproved by the Commissioner on September 20, 2011.  (Dkt. 10-2, Pg ID 40). Plaintiff requested a hearing and on December 6, 2012, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Renita Barnett-Jefferson, who considered the case de novo.  In a decision dated January 14, 2013, the ALJ found that plaintiff was not disabled.  (Dkt. 10-2, Pg ID 37-49).  Plaintiff requested a review of this decision and on February 28, 2014, the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council denied plaintiff's request for review.  (Dkt. 10-2, Pg ID 33-36); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1981 and was 28 years old on the alleged disability

onset date.  (Dkt. 10-2, Pg ID 47).  Plaintiff's past relevant work included work as

a home health care aide.  (Dkt. 10-2, Pg ID 47).  The ALJ applied the five-step

disability analysis to plaintiff's claim and found at step one that plaintiff had not

engaged in substantial gainful activity since the alleged onset date.  (Dkt. 10-2, Pg

ID 42).  At step two, the ALJ found that plaintiff's lumbar spine degenerative disk

disease and radiculopathy status-post spinal fusion surgery along with obesity

were "severe" within the meaning of the second sequential step.  (Dkt. 10-2, Pg ID

42).  At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  (Dkt. 10-2, Pg

ID 43).  At step four, the ALJ found that plaintiff could not perform her past

relevant work.  (Dkt. 11-2, Pg ID 53).  The ALJ concluded that plaintiff had the

residual functional capacity to perform a reduced range of sedentary work as

follows:

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR
> 404.1567(a) and 416.967(a) with the following
> exceptions: she can never climb ladders or scaffolds, but
> she can occasionally climb ramps or stairs; she can
> occasionally balance, stoop, kneel, crouch, and crawl;
> she must avoid all exposure to vibration, unprotected

heights and hazardous moving mechanical parts; and the
claimant is limited to simple tasks.

(Dkt. 10-2, Pg ID 43).  At step five, the ALJ denied plaintiff benefits because

plaintiff could perform a significant number of jobs available in the national

economy.  (Dkt. 10-2, Pg ID 47-48).

B.    Plaintiff's Claims of Error

Plaintiff contends that the ALJ's Step 3 analysis and determination that

Plaintiff's impairments do not meet or medically equal Listing 1.04(A) is not

supported by substantial evidence.  At the third step in the disability evaluation

process, a claimant will be found disabled if his impairment meets or equals one of

the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th

Cir. 2010).  A claimant must satisfy all of the criteria to "meet" the listing. *Id.*;

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  However, a

claimant is also disabled if her impairment is the medical equivalent of a listing,

20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner*, 381 Fed. Appx. at

488, which means it is "at least equal in severity and duration to the criteria of any

listed impairment." 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a).  Plaintiff

contends that the ALJ's Step 3 determination neglects to properly analyze or

explain why plaintiff's impairments do not meet or medically equal Listing

1.04(A).  (Tr. 11).  In considering presumptive disability at Step 3 of the

4

sequential evaluation, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review."  *See Christephore v. Comm'r Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. 2012), citing *Reynolds v. Comm'r Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011).  It is also established that the failure by an ALJ to articulate his findings at Step 3 results in error.  *See M.G. v. Comm'r Soc. Sec.*, 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2012); *Reynolds*, 424 Fed. Appx. at 416.

In *Reynolds*, the Sixth Circuit reversed the district court's affirmance of the ALJ's decision because the ALJ did not explain why the claimant did not meet or medically equal Listing 1.04.  The ALJ "needed to actually evaluate the evidence, compare it to section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence."  *Reynolds* at 416; *see also Clifton v. Chater*, 79 F. 3d 1007, 1009 (10th Cir. 1996) ("In this case, the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment.").  In *Reynolds*, the ALJ's step three analysis indicated that "Claimant does not have an impairment or combination of

5

impairments which, alone or in combination, meet sections 1.00 or 12.00 of the Listings." *Reynolds*, 424 Fed. Appx. at 415. Similarly, plaintiff argues that the ALJ's Step 3 determination is bereft of a meaningful and accurate discussion with regards to Listing 1.04(A) Disorders of the spine. (Tr. 23).

Listing 1.04(A) Disorders of the spine requires (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A). In her decision, the ALJ merely indicates that she "considered Listing 1.04, involving disorders of the spine," and that she believed "the record devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation." (Tr. 11). However, the only evidence that the ALJ references as part of her determination is Exhibit 12F, pg. 7-8, which is a CT lumbar myelogram from October 5, 2012, revealing a partial laminectomy at L4 level on the left and a L4-L5 spinal fusion. (Tr. 390). Significantly, plaintiff's

6

alleged onset date of disability is January 1, 2010, and according to plaintiff, the record contains a multitude of evidence that could be reasonably construed to meet or medically equal Listing 1.04(A) during the 22 month period between the onset date and the date of the lumbar myelogram.  Namely, a March 15, 2010 MRI of plaintiff's lumbar spine documents: L4-L5 endplate spondylosis with Modic type I discogenic endplate change; disc desiccation with moderate disk space narrowing and mild circumferential annular bulging with a posterior central disk herniation of the protrusion type; bilateral facet arthrosis; and central canal stenosis and bilateral lateral recess compromise with potential impingement on the descending bilateral L5 nerve roots; and degenerative changes at L5-S1.  (Tr. 246-247).

However, in her decision at Step 3, the ALJ indicates that "the record is devoid of evidence of nerve root compression … lumbar spinal stenosis."  (Tr. 11).  According to plaintiff, the ALJ's conclusion is blatantly wrong and cannot be said to constitute substantial evidence in support of her Step 3 conclusion.  *Id*. Furthermore, treatment records document a clinical impression of low back pain with left radiculopathy and on March 30, 2010, plaintiff was observed with a positive SLR test bilaterally.  (Tr. 258).  Plaintiff indicated that she experiences numbness and tingling down her left lower extremity and throbbing in her feet on numerous occasions.  (Tr. 258, 265, 277).  Dr. Zhao observed increased muscle tenderness in the lower thoracic and lumbar area, along with increased muscle

spasm at lumbar paraspinal muscles.  (Tr. 265, 277).  Plaintiff was assessed with an impression for: lumbosacral neuritis, lumbosacral disc degeneration; thoracic disc degeneration; and muscle spasm.  (Tr. 266).  Plaintiff underwent an EMG and Nerve Conduction Study on May 27, 2010, which revealed evidence of lumbar radiculopathy at L5-S1 level, mainly at the left side.  (Tr. 267).  In July 2010, plaintiff reported continued complaints of chronic lower back pain, which radiates to her legs, numbness/tingling in her feet/toes, and was observed with increased muscle tenderness in the thoracic and lumbar area.  (Tr. 277).

Treatment notes from April 28, 2011 reflect that plaintiff was observed with a positive SLR on the left, increased muscle tenderness in the thoracic and lumbar region, and increased muscle spasm in the lumbar paraspinal muscles.  (Tr. 272). Diagnoses were noted as lumbosacral neuritis, lumbosacral degeneration, and thoracic degeneration. *Id*.  An MRI of plaintiff's lumbar spine from March 20, 2011 reveals: moderate disk space narrowing with a paracentral disk protrusion; moderate compression of the thecal sac anterolaterally to the left with effacement of the left L5 nerve root; and left compressive neuroforaminal stenosis with disk material identified at the level of the lateral recesses. (Tr. 315).  Dr. Malcolm Field observed that plaintiff "walks slowly, bends slowly, extends with a great deal of discomfort, and a locking sensation."  (Tr. 322).  Furthermore, Dr. Field indicated that plaintiff has "advanced Modic type two changes at the L4-L5 level with

advanced facet joint changes on both sides at a couple of levels." (Tr. 323).

Treatment records from Dr. Zhao, dated July 21, 2011 document a positive SLR

on the left side. (Tr. 434). On January 9, 2012, plaintiff was observed with a

positive SLR, muscle tenderness, and muscle spasm. (Tr. 430). February 6, 2012

notes from Dr. Gerald Schell reflect that plaintiff presented with severe pain in her

back, and pain radiating down her leg. (Tr. 418). Dr. Schell noted that plaintiff's

pain "has affected her activities of daily living to the point where her life is

substantially affected by the amount of pain that she gets in her back radiating

posterolaterally into her left leg." *Id*. Furthermore, Dr. Schell observed that

plaintiff walks with pain and indicated that plaintiff demonstrated a positive SLR,

along with sensory changes on the L5 distribution. (Tr. 419). It was indicated that

plaintiff has an extruded disc at the L4-L5 level with disc space collapse at L4-L5

and significant Modic changes at L4-L5 level. *Id*. Plaintiff underwent a

decompressive lumbar laminectomy on February 9, 2012, performed by Dr. Gerald

Schell, at L4 with placement of bilateral screws at L4-L5 and a lateral fusion at

L4-L5. (Tr. 413, 415-416). Post-operative diagnoses included lumbar stenosis,

intractable back pain, and radicular leg pain. (Tr. 415).

Post-operatively, on March 28, 2012, plaintiff reported that her lower back

pain and stiffness has been improving since her surgery, but that her left foot pain

and toes were still severe. (Tr. 427). In addition, she continued to demonstrate a

positive SLR and increased muscle tenderness at the thoracic and lumbar areas. *Id*. Notes from August 30, 2012 reflect that Plaintiff demonstrated: decreased range of lumbar spine motion; difficulty with prolonged standing and walking; an antalgic gait pattern; and decreased sensation in the left lower extremity in the lateral aspect. (Tr. 380). In October 2012, it was indicated that plaintiff had a decreased range of motion and decreased lower extremity strength. (Tr. 376). According to plaintiff, this evidence could be reasonably construed to meet or medically equal Listing 1.04(A), as plaintiff has demonstrated evidence of canal stenosis, disk herniations, positive SLR testing, sensory loss, radiculopathy, decreased ranges of motion, muscle tenderness, and chronic pain. However, plaintiff maintains that the ALJ fails to properly analyze this relevant evidence against the relevant Listing. (Tr. 11). As a result, plaintiff says that the ALJ leaves this Court to speculate as to which of the multiple elements of Listing 1.04(A) the ALJ apparently felt were not satisfied or equaled. Plaintiff maintains that such an error makes it impossible to conduct a meaningful judicial review and thus, remand is required for proper consideration.

Plaintiff acknowledges that it is well settled that this court will not overturn an ALJ's decision if the failure to articulate Step 3 findings is harmless. *See M.G. v. Comm'r Soc. Sec.*, 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2012). However, plaintiff contends that remand is appropriate in cases, such as this, where the

district court's review of the ALJ's decision and the record evidence leaves open the possibility that a Listing is met or equaled.  *See Reynolds v. Comm'r Soc. Sec.*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing"); *see also May v. Astrue*, 2011 WL 3490186, at *9 (N.D. Ohio 2011). Taking the entirety of the evidence and facts together, along with the objective and clinical evidence, symptoms, and testimony outlined above, plaintiff contends that it is unreasonable to conclude that the ALJ's articulation error was harmless, since the evidence could reasonably meet or equal the relevant Listing.  Regardless of how the ALJ might ultimately decide plaintiff's claims, plaintiff urges the court to conclude that if the ALJ had made the required findings at Step 3, she necessarily would not have found that plaintiff did not meet or medically equal the relevant Listing. In addition, if the ALJ does find that the evidence establishes medical equivalence, plaintiff would be presumptively entitled to benefits.  *See Christephore v. Comm'r Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. 2012).

Plaintiff further contends that the ALJ erred by failing to obtain an expert medical opinion regarding medical equivalency as required by SSR 96-6p.  As outlined in *Stratton v. Astrue*, 2012 WL 1852084, *11-12 (D. N.H. 2012), the process by which ALJ's are to make step three determinations is set forth in SSR

11

96-6p:

> The administrative law judge…is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of facts, an administrative law
> judge…is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, longstanding
> policy requires that the judgment of a physician (or
> psychologist) designated by the Commissioner on the
> issue of equivalence on the evidence before the
> administrative law judge…must be received into the
> record as expert opinion evidence and given appropriate
> weight. 1996 WL 374180, at *3 (emphasis added);
> *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004)
> ("Whether a claimant's impairments equals a listing is a
> medical judgment, and an ALJ must consider an expert's
> opinion on the issue.") (citing 20 C.F.R. § 404.1526(b));
> *Retka v. Comm'r Soc. Sec.*, 1995 WL 697215, at *2 (6th
> Cir. 1995) ("Generally, the opinion of a medical expert is
> required before a determination of medical equivalence
> is made.") (citing 20 C.F.R. § 416.926(b)).

In this case, State agency Medical Consultant Dr. Daniel Dolanski, considered

plaintiff's impairments in the initial application determination dated September 20,

2011. (Tr. 63-66). However, according to plaintiff, the ALJ does not rely on Dr.

Dolanski's assessment in reaching her Step 3 conclusions. (Tr. 11). Moreover,

Dr. Dolanski did not have the benefit of reviewing the entirety of the medical

evidence in the case at the time of his assessment. (Tr. 63-66). Dr. Dolanski's

opinion was issued in September 2011 and this case was adjudicated in December

2012, with a decision issued in January 2013. (Tr. 63-66, 5-21). SSR 96-6p

indicates that the ALJ should obtain an updated medical opinion from a medical expert where additional medical evidence is received that could modify the State agency medical consultant's finding that the impairment(s) was not equivalent in severity to any Listed impairment. *See* SSR 96-6p. In this case, Dr. Dolanski did not review or evaluate any evidence contained in Exhibits 8F-14F, representing over 90 pages of the most recent medical evidence. (Tr. 63-66). As a result, the issue of medical equivalency was not adequately considered by a medical expert.

In addition, plaintiff contends that the ALJ in this case does not even rely on Dr. Dolanski's assessment in reaching her Step 3 determination. (Tr. 11). The ALJ does indicate that she gave the "State agency medical consultant's opinion that the claimant should be restricted to work activities at the sedentary level with additional postural and environmental limitations significant weight." (Tr. 15). Notably, the ALJ does not indicate any weight accorded to Dr. Dolanski's opinion regarding medical equivalency at Step 3, and only explicitly relies on the RFC assessment of Dr. Dolanski. *Id*. As a result, plaintiff maintains that the ALJ does not rely on the expert medical opinion of any physician whatsoever in reaching her determination regarding medical equivalency of Listing 1.04(A). (Tr. 11). Thus, plaintiff also contends that remand is warranted so that the ALJ can obtain updated expert opinion evidence regarding medical equivalency.

C.   Commissioner's Motion for Summary Judgment

The Commissioner maintains that substantial evidence supports the ALJ's step-three determination. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). It was plaintiff's burden to show that she met the requirements of any listed impairment. *McGrew v. Comm'r of Soc. Sec.*, 2012 WL 4378270, at *7 (E.D. Mich. 2012) report and recommendation adopted, 2012 WL 4449036 (E.D. Mich. 2012). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

Plaintiff argues that the ALJ erred in finding that she did not meet Listing 1.04(A), which requires a claimant to demonstrate:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id*. at § 1.04. The ALJ found that plaintiff did not meet Listing 1.04, reasoning

14

that, "the record is devoid of evidence of nerve root compression, spinal arachoniditis, or lumbar spinal stenosis with accompanying ineffective ambulation." (Tr. 11). The Commissioner asserts that the ALJ's step-three finding is supported by substantial evidence. (Tr. 11). Specifically, the record showed that plaintiff's sensory and motor function was consistently normal, across the entire period at issue. (Tr. 266, 272, 273, 275, 277, 279, 322, 426, 428, 430, 432, 434). Furthermore, she had no limb or muscle weakness (Tr. 266, 272, 273, 277, 279, 419, 430, 432), except for directly after back surgery. (Tr. 410). Within two months of her February 2012 surgery, she was no longer displaying limb weakness. (Tr. 428). Because plaintiff cannot show that she experienced sensory or reflex loss and muscle weakness, the ALJ properly determined that she did not meet Listing 1.04(A). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A) (requiring a claimant to show sensory or reflex loss and muscle weakness in order to meet the listing). That plaintiff can point to other elements of Listing 1.04(A) that she does meet is without consequence, as she was required to show that she met all the criteria of the listing. *Zebley*, 493 U.S. at 530.

Plaintiff next argues that the ALJ's step-three analysis was insufficiently detailed, relying on *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx 411, 415 (6th Cir. 2011). According to the Commissioner, plaintiff's reliance on *Reynolds* is misplaced. Unlike in this case, the ALJ in *Reynolds* conducted "[n]o analysis

15

whatsoever … as to whether Reynolds' physical impairments…met or equaled a Listing under section 1.00…." *Id*. Here, the ALJ explicitly considered whether plaintiff met Listing 1.04 and cited to evidence in the record for her conclusion that plaintiff did not meet the listing. (Tr. 11); *Reynolds*, 424 Fed. Appx. at 416 (finding that the ALJ "skipped an entire step of the necessary analysis"). In support of her argument that the ALJ's step-three analysis was deficient, plaintiff argues that the ALJ erred in referencing only one exhibit in that portion of her decision. According to the Commissioner, an ALJ does not err "by not spelling out every consideration that went into the step three determination [in that section]. The language of 20 C.F.R. sections 404.1526 and 416.936] does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment.'" *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006).

Moreover, even assuming that this Court determines that the ALJ's step-three analysis was insufficient, remand would not be an appropriate remedy, as it is clear from the evidence set out above that Plaintiff cannot meet her burden to show that she satisfies Listing 1.04(A). *See M.G. v. Comm'r of Soc. Sec.*, 861 F.Supp.2d 846, 859-60 (E.D. Mich. 2012) (a Court "may overlook the ALJ's failure to articulate his Step Three findings if the error is harmless in nature")

(citing *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008)) ("As a general rule, we have held that an ALJ's failure to adequately explain his factual findings is 'not a sufficient reason for setting aside an administrative finding' where the record supports the overall determination.").

The Commissioner also maintains that the ALJ was not required to call a medical advisor on equivalency. Plaintiff argues that Social Security Ruling (SSR) 96-6p, 1996 WL 374180 (July 2, 1996), required the ALJ to call for the opinion of an ME, to determine the issue of medical equivalence at step three. SSR 96-6p indicates that, "[t]he signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." Here, reviewing physician Dr. Dolanski specifically considered whether plaintiff met Listing 1.04 (Tr. 51, 63), and concluded that she did not. (Tr. 51-56, 63-66).

Plaintiff also argues that Dr. Dolanski's opinion does not satisfy the requirements of SSR 96-6p in this case, because the ALJ "did not rely" on the doctor's opinion about Listing 1.04, in that she did not "indicate any weight

17

accorded to Dr. Dolanski's opinion regarding medical equivalence at Step 3, and only explicitly relies upon the RFC assessment of Dr. Dolanski." (Pl. Br. at 21). Contrary to plaintiff's argument, the Commissioner points out that when the ALJ assigned "significant weight" to Dr. Dolanski's RFC assessment, she inherently accepted his determination that plaintiff did not meet Listing 1.04; the doctor's determination that plaintiff could perform sedentary work was inherently contrary to a finding she met a listing. (Tr. 15, 51-56, 63-66). For this reason, plaintiff's argument that the ALJ did not rely upon Dr. Dolanski's opinion about Listing 1.04 is without merit.

Plaintiff also argues that the ALJ was required to call a medical advisor because Dr. Dolanski's opinion was too remote and he did not have the benefit of the additional evidence submitted after his opinion was rendered. An ALJ or the Appeals Council "must obtain an updated medical opinion from a medical expert in the following circumstances: When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or [w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any

18

impairment in the Listing of Impairments." SSR 96-6p, at *3-4.

According to the Commissioner, neither the ALJ nor the Appeals Council was of the opinion that a judgment of equivalence might have been reasonable. (Tr. 1-4, 11).  The Commissioner also points out that neither the ALJ nor the Appeals Council was of the opinion that the evidence submitted after Dr. Dolanski issued his findings might have changed his opinion that plaintiff did not meet Listing 1.04.  (Tr. 1-4, 11).  Plaintiff herself does not suggest how the 90 pages of additional evidence might have changed Dr. Dolanksi's opinion, nor could she, given that the evidence submitted after Dr. Dolanski's report contained some of the most detrimental evidence to plaintiff's argument that she met a listing. Specifically, evidence submitted after Dr. Dolanski rendered his opinion included the October 2012 imaging of plaintiff's spine, which revealed no stenosis or compression, elements plaintiff would have to show, in order to meet Listing 1.04(A).  (Tr. 390-391).  The ALJ explicitly relied on the October 2012 imaging in determining that plaintiff did not meet Listing 1.04 (Tr. 11), clearly indicating that, quite reasonably, she was not of the opinion that later evidence might have changed Dr. Dolanksi's opinion.  SSR 96-6p, at *3-4.  For these reasons, the Commissioner maintains that the ALJ was not required to call upon the services of a medical advisor.

D.    Plaintiff's Reply

In reply, plaintiff continues to argue the ALJ's Step 3 determination that plaintiff does not meet or medically equal the requirements of Listing 1.04A for spinal disorders is not supported by substantial evidence.  As noted in plaintiff's opening brief, *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411 (6th Cir. 2011) indicates that the ALJ needs to not only identify the proper Listing, but also evaluate the relevant evidence and give an explained conclusion in order to allow for proper judicial review.  Furthermore, remand is appropriate in cases, such as this, where the district court's review of the ALJ's decision and the record evidence leaves open the possibility that a Listing is met or equaled.  *See Reynolds v. Comm'r Soc. Sec.*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing").  In her response, defendant focuses her argument only on the issue of "meeting" Listing 1.04A, and attempts to provide a post-hoc rationalization of the ALJ's Step 3 determination by offering her interpretation of the evidence balanced against the Listing requirements. (Def.'s Resp. 15-17).  Plaintiff maintains that this certainly cannot be sufficient to support defendant's argument. *See Christephore v. Comm'r Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a de novo review of the evidence or to rubber stamp the

ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's.").

According to plaintiff, defendant makes no argument whatsoever in response to the possibility of plaintiff's impairments medically equaling the requirements of Listing 1.04A. As argued in plaintiff's initial brief, "remand is appropriate in cases, such as this, where the district court's review of the ALJ's decision and the record evidence leaves open the possibility that a Listing is met or equaled. *See Reynolds v. Comm'r Soc. Sec.*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing"); *see also May v. Astrue*, 2011 WL 3490186, at *9 (N.D. Ohio 2011)." In finding the ALJ's analysis insufficient under the proper standard, this Court has held that the "ALJ's lack of narrative deprives the federal court of its ability to act as an appellate tribunal and instead forces the court to become the finder of fact…." *See Bolla v. Commissioner of Soc. Sec.*, 2012 WL 884820, at *6 (E.D. Mich. 2012).

According to plaintiff, defendant incorrectly argues that "Plaintiff cannot show that she experienced sensory or reflex loss and muscle weakness." (Def.'s Resp. 16). Dr. Schell determined that plaintiff demonstrated sensory changes along the L5 distribution in February 2012. (Tr. 419). Moreover, plaintiff

maintains that the ALJ's finding that "the record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation" is a completely inaccurate interpretation of the evidence.  (Tr. 11).  Plaintiff points to March 15, 2010 MRI documents: L4-L5 endplate spondylosis with Modic type I discogenic endplate change; disc desiccation with moderate disk space narrowing and mild circumferential annular bulging with a posterior central disk herniation of the protrusion type; bilateral facet arthrosis; and central canal stenosis and bilateral lateral recess compromise with potential impingement on the descending bilateral L5 nerve roots; and degenerative changes at L5-S1.  (Tr. 246-247).  Plaintiff underwent an EMG and Nerve Conduction Study on May 27, 2010, which revealed evidence of lumbar radiculopathy at L5-S1 level, mainly at the left side.  (Tr. 267).  An MRI of plaintiff's lumbar spine from March 20, 2011 reveals: moderate disk space narrowing with a paracentral disk protrusion; moderate compression of the thecal sac anterolaterally to the left with effacement of the left L5 nerve root; and left compressive neuroforaminal stenosis with disk material identified at the level of the lateral recesses.  (Tr. 315).  According to plaintiff, defendant cannot overcome these facts.  Thus, plaintiff maintains that the ALJ's articulation error was not harmless, since the evidence could reasonably meet or equal the relevant Listing.

According to plaintiff, defendant incorrectly argues that "when the ALJ

assigned 'significant weight' to Dr. Dolanski's RFC assessment, she inherently

accepted his determination that Plaintiff did not meet Listing 1.04." (Def.'s Resp.

19). Plaintiff maintains that this theory is factually inaccurate and speculative. In

her decision, the ALJ specifically indicated that "I give the State agency medical

consultant's opinion that the claimant should be restricted to work activities at the

sedentary exertional level with additional postural and environmental limitations

significant weight because this is consistent with the evidence of record as whole."

(Tr. 15). The ALJ makes it clear that she is assigning significant weight to the

State agency medical consultant's opinion concerning the claimant's RFC

assessment. What's more, the ALJ does not indicate any weight accorded to Dr.

Dolanski's opinion regarding medical equivalency as part of her Step 3

determination. *Id*. As a result, plaintiff maintains that the ALJ does not rely on

the expert medical opinion of any physician whatsoever in reaching her

determination regarding medical equivalency of Listing 1.04(A). (Tr. 15).

Therefore, plaintiff contends that remand is warranted so that the ALJ can obtain

updated expert opinion evidence regarding medical equivalency.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

24

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard
presupposes that there is a 'zone of choice' within which the Commissioner may
proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,
1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record
only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.
2001).  When reviewing the Commissioner's factual findings for substantial
evidence, a reviewing court must consider the evidence in the record as a whole,
including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of
Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of
appeals and the district court may look to any evidence in the record, regardless of
whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc.
Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that
either the ALJ or the reviewing court must discuss every piece of evidence in the
administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508
(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly
addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

26

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

28

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or medically equals a Listed Impairment. *See Christephore*, 2012 WL 2274328, at *6. The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. *See Harvey v. Comm'r of Soc. Sec.*, 2014 WL 5465531, at *4 (E.D. Mich.2014). To show that an impairment matches a Listing, the claimant must

show that his or her impairments meet all of the specified criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify.  *Id.*  To satisfy this burden, the claimant must offer medical findings equal to the severity of the requirements, and the findings must be supported by medically acceptable clinical and laboratory techniques.  20 C.F.R. § 404.1526(b).

When considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review."  *Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. 2012), citing *Reynolds*, 424 Fed. Appx. at 416.  An ALJ's failure to sufficiently articulate his Step Three findings is error.  *See M.G.*, 861 F. Supp.2d at 858-59; *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. 2012) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section").  For example, in *Andrews v. Commissioner of Social Security*, 2013 WL 2200393 (E.D. Mich. 2013), plaintiff argued that the ALJ erred in failing to consider whether her cervical and lumbar spine impairments meet or medically equal Listing 1.04A for "disorders of the spine."  *Id.* at *11.  The ALJ there simply stated:  "The claimant does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments[.]" *Id.* The court noted that the ALJ explicitly found that plaintiff suffers from degenerative disc disease and cervical spondylosis, and thus "should have considered and discussed [plaintiff's] impairment(s) relative to Listing 1.04A," and "[h]er failure to do so constitutes legal error." *Id.* at *12.

Here, the ALJ expressly considered whether plaintiff's impairments met Listing 1.04, and determined that they did not.  Plaintiff contends that the ALJ's explanation is inadequate.  The undersigned concedes that, standing alone, it may be questionable as to whether the ALJ's analysis as stated at Step Three of her decision suffices to support a finding that plaintiff's impairments did not meet Listing 1.04(A).  However, it is well-settled that the Court may look at the rest of the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three determination.  *See Vance v. Colvin*, 2014 WL 4925069, at *13 (N.D. Ohio Sept. 30, 2014) (citing *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006)).  Indeed, the ALJ here specifically notes that the "record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation" and a review of the ALJ's decision reveals that the ALJ did discuss all of the medical evidence on which plaintiff relies.  Further, the court will not overturn an ALJ's decision if the failure to articulate Step Three findings was harmless.  *See M.G.*, 861 F. Supp.2d at 859.

31

Such an error is harmless where "concrete factual and medical evidence is

apparent in the record and shows that even if the ALJ had made the required

findings, the ALJ *would have* found the claimant not disabled...." *Id.*. at 861

(citation omitted, emphasis in original). This is because the Sixth Circuit "has

consistently rejected a heightened articulation standard, noting . . . that the ALJ is

under no obligation to spell out 'every consideration that went into the step three

determination' or 'the weight he gave each factor in his step three analysis,' or to

discuss every single impairment." *Andrews*, 2013 WL 2200393, at *12 (citing

*Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citation

omitted)). As the *Staggs* court further stated, "[n]or is the procedure so legalistic

that the requisite explanation and support must be located entirely within the

section of the ALJ's decision devoted specifically to step three; the court in

*Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for

statements supporting his step three analysis." *Staggs*, 2011 WL 3444014, at *3

(citing *Bledsoe*, 165 Fed. Appx. at 411). Thus, remand is not required where the

evidence makes clear that even if the ALJ "had made the required findings, [she]

*would have* found the claimant not disabled." *M.G.*, 861 F. Supp.2d at 861.

Conversely, remand is appropriate in cases where the court's review of the ALJ's

decision and the record evidence leaves open the possibility that a listing is met.

*See Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is

not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing").

Here, in order for plaintiff to meet the criteria of Listing 1.04A, she must show that she has a disorder of the spine with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A. It is well-settled that to "meet" a listing, a claimant's impairments must satisfy each and every element of the listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Blanton v. Soc. Sec. Admin.*, 118 Fed. Appx. 3, 6 (6th Cir. 2004). Even if plaintiff cannot demonstrate that she meets the criteria of Listing 1.04A, however, she can still satisfy her burden at Step Three by proving that she has an impairment (or combination of impairments) that medically equals this Listing. To do so, she must "present medical evidence that describes how h[er] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004). This means that plaintiff must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 Fed. Appx. 868, 874 (6th Cir. 2003).

In this case, the ALJ concluded that while plaintiff has degenerative disc disease and radiculopathy, the record contained no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation.   *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) ("The claimant has the burden at the third step of the sequential evaluation to establish that he meets or equals a listed impairment.") (internal citations omitted).   As the Commissioner points out, the record showed that plaintiff's sensory and motor function was consistently normal, across the entire period at issue.   (Tr. 266, 272, 273, 275, 277, 279, 322, 426, 428, 430, 432, 434). Furthermore, she had no limb or muscle weakness (Tr. 266, 272, 273, 277, 279, 419, 430, 432), except for directly after back surgery.   (Tr. 410).   Within two months of her February 2012 surgery, she was no longer displaying limb weakness.   (Tr. 428).   The vast majority of medical evidence on which plaintiff relies in support of her claim that she met the Listing was medical evidence before her surgery.   Plaintiff does not explain how the post-surgery evidence she points to supports her claim that she met the Listing.   Thus, the undersigned agrees with the Commissioner that because plaintiff cannot show that she experienced sensory or reflex loss and muscle weakness after her surgery, the ALJ properly determined that she did not meet Listing 1.04(A).

Additionally, as the Commissioner properly points out, substantial evidence

supports the ALJ's determination that the plaintiff's back impairment does not equal a listing. The Disability Determination Service's State agency medical consultant, Dr. Dolanski, whose opinion the ALJ gave significant weight, reviewed plaintiff's medical records and concluded that plaintiff did not meet or equal any listing when he signed off on the "Disability Determination and Transmittal" form, indicating that plaintiff is not disabled. (Tr. 10-3, Pg ID 82-101, 102). The doctor's signature on this form signaled that he had considered the question of whether plaintiff met or equaled a listing. *See* SSR 96-6p, 1996 WL 374180, at *3 ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."); *Curry v. Sec'y of Health & Human Servs.*, 1988 WL 89340, at *5 (6th Cir. Aug. 29, 1988) ("[T]he physician's signatures on the SSA-831-U5 forms are proof that a physician designated by the Secretary has considered whether the claimant's impairments are medically equivalent to an impairment described in the Listings.") (citation omitted). The ALJ expressly relied on the opinion of Dr. Dolinski in reaching his decision, and thus properly considered the issue of equivalence. Thus, there was no error in this regard.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 17, 2015              s/Michael Hluchaniuk
                                   Michael Hluchaniuk
                                   United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on August 17, 2015, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                   s/Tammy Hallwood
                                   Case Manager
                                   (810) 341-7887
                                   tammy_hallwood@mied.uscourts.gov